IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | | |
|---|---|---|
| Marshall T. Mays, | ) | Civil Action No. 3:05-796-MJP-JRM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| United States of America, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pro se plaintiff, Marshall T. Mays ("Mays"), filed this action on March 15, 2005, seeking recovery of taxes he alleges were erroneously collected by the Internal Revenue Service ("IRS").[1] Defendants filed an answer on May 27, 2005 and a motion for summary judgment on February 10, 2006. Because Mays is pro se, an order pursuant to <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975) was issued on February 13, 2006 advising him of summary judgment procedures and his responsibility to respond to the motion for summary judgment. Mays filed a response on February 24, 2006, and a letter concerning summary judgment on April 13, 2006.

Although the complaint contains various allegations about the IRS process, the case boils down to the issue of whether the IRS improperly denied a deduction for a bad debt in the amount of $80,000 claimed on Mays' 1997 tax return.[2] At a hearing held on November 16, 2005, the undersigned expressed concern that the pleading did not establish a statutory basis for the

---

[1]This case was automatically referred to the undersigned for all pretrial matters pursuant to Local Rule 73.02(B)(2)(e), D.S.C.

[2]Defendant's memorandum contains a summary of the law applicable to this Court's consideration of Mays' claim. Mays does not object to the legal standards set out by defendant.

maintenance of this action. By letter dated November 17, 2005, counsel for defendant explained that 28 U.S.C. § 1346(c)(1) "provides a waiver of sovereign immunity for suits by taxpayers for the recovery of any tax alleged to have been erroneously collected." Defendant concedes that Mays has complied with all regulatory prerequisites before the filing of this action.

### Standard for Summary Judgment

When no genuine issue of any material fact exists, summary judgment is appropriate. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). The facts and inferences to be drawn from the evidence must be viewed in the light most favorable to the non-moving party. Id. This does not mean that summary judgment is never appropriate in these cases. To the contrary, "'the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). "Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985).

In this case, defendant "bears the initial burden of pointing to the absence of a genuine issue of material fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). If defendant carries this burden, "the burden then shifts to the non-moving party to come forward with facts sufficient to create a triable issue of fact." Id. at 718-19 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Moreover, "once the moving party has met his burden, the nonmoving party must come forward with some evidence beyond the mere allegations contained in the pleadings to show there is a genuine issue for trial." Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992).

The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment.  Id. and Doyle v. Sentry Inc., 877 F. Supp. 1002, 1005 (E.D.Va. 1995).  Rather, the non-moving party is required to submit evidence of specific facts by way of affidavits [see Fed. R. Civ. P. 56(e)], depositions, interrogatories, or admissions to demonstrate the existence of a genuine and material factual issue for trial.  Baber, citing Celotex Corp., supra.  Moreover, the non-movant's proof must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits."  Mitchell v. Data General Corporation, 12 F.3d 1310, 1316 (4th Cir. 1993) and DeLeon v. St. Joseph Hospital, Inc., 871 F.2d 1229, 1233 (4th Cir. 1989), n.7.  Unsupported hearsay evidence is insufficient to overcome a motion for summary judgment.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547 (5th Cir. 1987) and Evans v. Technologies Applications & Services Co., 875 F. Supp. 1115 (D.Md. 1995).

## Discussion

The bad debt business deduction that was disallowed grew out of complex financial transactions relating to the development of a real estate project in Alexandria, Virginia.  Defendant's motion for summary judgment is supported by a number of documents relating to the project as well as deposition testimony of Mays.  Mays has presented no documents or affidavits in support of his position, but in his Roseboro response filed February 24, 2006, he states that "(t)he documents accompanying the Defendant's Motion in fact prove the Plaintiff's case."  Thus, the parties agree that the following documents are controlling:

1.     Mays' deposition given November 15, 2005 ("Pl. Dep. __").

2.     Exhibits to Plaintiff's Depositions of November 15, 2005:

3

  a.  Irrevocable Letter of Credit issued by the County Bank of Greenwood, South Carolina ("CBG") on June 21, 1992 to First & Merchants National Bank of Richmond, Virginia ("F&M") in favor of Mays in the amount of $85,000 ("Ex. 1").

  b.  Demand letter for payment of the Irrevocable Letter of Credit dated December 13, 1983 ("Ex. 2").

  c.  Final Order, <u>Charles A. White, Jr., et al. v. Marshall T. Mays</u>, Chancery No. 18296, Circuit Court for the City of Alexandria dated December 21, 1992 ("Ex. 3").

  d.  Certificate of Amendment of Limited Partnership of 1522 King Street Associates, L.P. ("Ex. 4").

  e.  Settlement Agreement in <u>White v. Mays</u>, Chancery No. 18296 dated November 23, 1994. ("Ex. 7").

  f.  Excerpts in deposition of Mays taken July 31, 1989 in <u>Charles A. White, Jr., et al. v. Marshall T. Mays</u>, At Law No. 12591, Circuit court of the City of Alexandria ("Ex. 10").

  g.  Certificate of Cancellation of 1522 King Street Associates, LP ("Ex. 11").

This record establishes the following facts in the light most favorable to Mays:

  1.  In 1982 Mays negotiated to cause CBG to issue an Irrevocable Letter of Credit to F&M in his favor in the amount of $85,000. The letter of credit was issued on June 21, 1982. The letter of credit was secured by Mays' personal note to CBG for the $85,000.

2.    In 1983 a limited partnership was formed under Virginia law, 1552 King Street Associates, LP ("the partnership") for the purpose of "the restoration of an historic building and the construction and operation of commercial and office buildings, garage and related facilities (Ex. 4). Mays was the general partner.

3.    On December 13, 1983, F&M advanced Mays the $85,000 and demanded payment from CBG.

4.    Mays loaned the partnership the $85,000 he received under the letter of credit but no note was given by the partnership to Mays. (Ex. 10, p. 52).

5.    A principal payment of $10,000 was paid to CGB reducing the debt to $75,000. (Ex. 10, p. 52).

6.    Mays, as general partner, began to solicit limited partners as investors. At that time, a published private offering showed that the partnership owed the general partner (Mays), $108,000, $75,000 of which was the amount funded through the letter of credit. Mays individually owed CGB the same amount. (Ex. 10, p. 52).

7.    Two of the limited partners were Charles A. White, Jr. ("White") and Joseph L. Fellona, Jr. ("Fellona") (Ex. 4).

8.    CGB called on Mays to pay the balance of $75,000. Neither Mays nor the partnership had the funds. Mays negotiated an $80,000 loan from his brother. Mays gave his brother a note for $80,000. The $80,000 from Mays' brother was deposited in the partnership account and a partnership check was drawn to CGB retiring the debt. (Ex. 10, pp. 113-14). The net result of these transactions was to substitute Mays' brother for CGB. The partnership still owned Mays.

9.      In 1985, the partnership negotiated a loan in the amount of $100,000 with Bruke &
        Herbert ("B&H"), a Virginia Bank.  A portion of the proceeds was deposited into the
        partnership account, but a larger portion was paid directly to Mays' brother erasing
        the indebtedness. (Ex. 10, pp. 112-14).

10.     In 1988, Mays was removed as general partner and replaced by White and Fellona.
        (Ex. 4).

11.     Apparently the project did not go well and litigation erupted in Virginia and South
        Carolina as follows:

        a.      <u>White, et al. v. Mays</u>, Chancery No. 18296, Circuit Court of the City of
                Alexandria, Virginia;

        b.      <u>White et al. v. Mays</u>, At Law No. 12591, Circuit Court of the City of
                Alexandria, Virginia.

        c.      <u>White et al. v. Mays</u>, 93-CP-22-156, Georgetown County Court of Common
                Pleas;

        d.      <u>White et al., v. Mays</u>, 93-CP-22-323, Georgetown County Court of Common
                Pleas;

        e.      <u>White et al. v. Mays</u>, 93-CP-24-144, Greenwood County Court of Common
                Pleas; and

        f.      <u>White et al. v. Mays</u>, 93-CP-24-370, Greenwood County Court of Common
                Pleas.

12.     On December 21, 1992, a final order was issued in Chancery No. 18296 which was
        objected to by all parties. (Ex. 3).

13.    On November 23, 1994, Mays, White and Fellona entered into a settlement agreement in Chancery No. 18296 which appears to act as a universal settlement of all their disputes. (Ex. 7).

14.    The partnership was dissolved in 1995.

In his complaint, Mays alleges that his 1997 "Form 1040 claimed a Section 166 Business Bad Debt deduction of $80,000 (the 'Deduction') and attached an explanatory summation of the loss as being one that arose from writing off a debt owned to him, as determined by the Final Order of the Circuit Court for the City of Alexandra, Virginia dated December 21, 1992 and filed in Book 135 at Page 814, by 1522 King Street Associates, L.P. (the 'Partnership') in the amount of $80,000." The complaint further alleges that this deduction was disallowed resulting in a substantial deficiency ($34,225.08) which he has paid.

Defendant argues that it is entitled to summary judgment because there was no bona fide debt to Mays after 1985. Based on the facts stated above, defendant argues that when the partnership negotiated the $100,000 loan from B&H in 1985 and paid Mays' brother who had replaced CBG as lender on the debt created by the letter of credit, there was no debt to Mays. At that point, the debt was one of the partnership to B&H. Mays does not address this argument. In his one page Roseboro response, Mays simply states "(t)here is now no dispute that the letter of credit from The County Bank of Greenwood, S.C. to the First & Merchants' Bank of Virginia provided $85,000 to the construction lender for the benefit of 1522 King Street Associates limited partnership. The liability of the partnership and its subsequent general partner, Charles White, to Marshall T. Mays, the Plaintiff, establishes the debt due to Mays, contrary to the IRS argument." Mays appears to argue that the debt somehow survived, but he cites no evidence for this position. The portion of the

complaint quoted above seems to allege that evidence of the debt is contained within the Final Order in <u>White et al. v. Mays</u>, Chancery No. 18296 which is Ex. 3.

Exhibit 3 does not establish that the partnership and/or White owed Mays $80,000 based on the loan transactions discussed above. Exhibit 3 appears to be an order allocating assets and liabilities between Mays and the partnership. The order established a "Mays' Credit Account" which was to be established by the partnership and to be used to make periodic payments to Mays based on a percentage of the partnership's net cash flow. The order recognized certain indebtedness to Mays by the partnership which was to form the basis of the Mays' Credit Account, but also recognized certain credits against the account for debts owed by Mays to the partnership. Interestingly, the only apparent references to the letter of credit transactions in Ex. 3 required Mays to reimburse the partnership for $21,666 and $10,000 not for the partnership to reimburse Mays. Exhibit 3 does  establish that as of December 21, 1992, the partnership had a debt to Mays, but it does not establish an $80,000 debt of the partnership to Mays based on the letter of credit loan that was made to Mays by CBG as discussed above.

Alternatively, defendant asserts that even if there was a debt after 1985 as claimed by Mays such debt was resolved in the Settlement Agreement of November 23, 1994. (Ex. 7). Again, Mays has not responded to this argument.

This Settlement Agreement is in the same case as the final order (Chancery No. 18296) discussed above. However, Ex. 7 also includes settlement of other litigation. It appears that White and Fellona obtained judgments against Mays and sought through supplemental proceedings to sell Mays' property in South Carolina to satisfy those judgments. Exhibit 7 is a settlement of all disputes between the parties. All cases were settled when Mays paid White and Fellona $60,000. By the

terms of Exhibit 7, Mays generally released White and Fellona "from any and all business transactions, agreement, or incidents between the parties from the creation of the world to the end of time, including, without limitation, the Circuit Court of City of Alexandra Chancery Case No. 18296...." (Ex. 7, ¶ 6).  Likewise, Mays released White and Fellona from all claims. (Id.).  If the partnership, White or Fellona owed Mays any debt, it was certainly included in the 1994 settlement.

Based on the record before the court, the undersigned funds that Mays has not shown that the $80,000 business loss he claimed on his 1997 return was a bona fide debt.

Defendant also argues that even if there was a bona fide debt, it is entitled to summary judgment because Mays cannot show that the debt became worthless in 1997.[3]  The taxpayer must show that some event occurred which caused the debt to become worthless in the year the deduction is claimed.  In re Landbank Equity Corp., 973 F.2d 265, 269 (4th Cir. 1992).  Here, Mays makes no such effort.  Mays testified at his deposition in this case that he took the business loss deduction in 1997 because it was his first opportunity to write the loss off based on his income. (Pl. Dep. 44-46).

## Conclusion

Based on a review of the record, the undersigned finds that there was no bona fide debt to support plaintiff's claim of a business loss deduction in 1997.  It is, therefore, recommended that defendant's motion for summary judgment be granted.

Respectfully submitted,

s/Joseph R. McCrorey
United States Magistrate Judge

June 19, 2006
Columbia, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

---

[3]Title 26 U.S.C. § 166 requires the taxpayer to show that the debt "becomes worthless with the taxable year."

## <u>Notice of Right to File Objections to Magistrate Judge's Report and Recommendation</u>
<u>&</u>
## <u>The Serious Consequences of a Failure to Do So</u>

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of its filing. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. Based thereon, this Report and Recommendation, any objections thereto, and the case file will be **delivered to a United States District Judge** fourteen (14) days after this Report and Recommendation is filed. Advance Coating Technology, Inc. v. LEP Chemical, Ltd., 142 F.R.D. 91, 94 & n. 3 (S.D.N.Y. 1992). A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. See Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410 (D.S.C. 1993).

During the ten-day period, <u>but</u> <u>not</u> thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he wishes the United States District Judge to consider any objections. **Any written objections must** *specifically identify* **the portions of the Report and Recommendation to which objections are made** *and* **the basis for such objections.** Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. See United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-47 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509 (6th Cir. 1991). See also Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-19 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

See also Branch v. Martin, 886 F.2d 1043, 1046 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd. Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the parties of the consequences of a failure to file specific, written objections. See Wright, supra.; and Small v. Secretary of HHS, 892 F.2d 15, 16 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing addressed as follows:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201